UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-8094-GW-Ex | Date | February 20, 2020 |
|---|---|---|---|
| Title | *Raul James Barboza, et al. v. Flowers Foods, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Peter S. Rukin, by telephone | Jared L. Palmer |

**PROCEEDINGS:** **DEFENDANTS' MOTION TO STAY THIS ACTION PENDING THE RESOLUTION OF WHETHER THE "ABC" TEST APPLIES RETROACTIVELY AND WHETHER THE FAAAA PREEMPTS THE "ABC" TEST [18]**

Court and counsel confer. The tentative circulated and attached hereto, is adopted as the Court's final ruling. Defendants' Motion is GRANTED.

The Court sets a status conference for July 9, 2020 at 8:30 a.m., with a joint status report to be filed by noon on July 7, 2020. The Court stays this matter until July 9, 2020.

| | : | 02 |
|---|---|---|
| | Initials of Preparer | JG |

<u>*Raul James Barboza et al v. Flowers Foods, Inc. et al*</u>; Case No. 2:19-cv-08094-GW-(Ex)
Tentative Ruling on Motion to Stay

I.   **Background**

Plaintiffs Raul James Barboza, Manuel Marquez, Francis Reaport, Matthew Blehm, Larry Lundvall, Edward Smith, Gary Hayes, Michael Martinson, and Gabriel Fierro sue Defendants Flower Foods, Inc. ("Flower Foods"), Flowers Baking Co. of Modesto LLC ("Modesto Flowers"), and Flowers Baking Co. of Henderson LLC ("Henderson Flowers") for: (1) reimbursement of business expenses, under Cal. Labor Code § 2802; (2) unlawful deductions from wages, under Cal. Labor Code §§ 221, 223, 400-10; (3) failure to provide off-duty meal periods, under Cal. Labor Code §§ 226.7, 512; (4) failure to authorize and permit paid rest periods, under Cal. Labor Code §§ 226.7, 1194; (5) failure to furnish accurate wage statements, under Cal. Labor Code §§ 226, 226.3; (6) California unpaid overtime compensation, under Cal. Labor Code §§ 410, 1194, *et seq.*, and IWC Wage Order No. 1; and (7) violations of the Unfair Competition Law ("UCL"), Cal. Business & Professions Code §§ 17200-09. *See generally* Complaint, Docket No. 1-1.

Plaintiffs allege the following: Plaintiffs are all residents of California who served as bakery distributor drivers and delivery drivers for Flowers. *See id.* ¶¶ 9-17. Barboza, Marquez, Blehm, Hayes, and Fierro began working for Defendants through employment placements with ABM and were treated as W-2 employees for tax purposes. *See id.* Subsequently, all Plaintiffs entered into Distributor Agreements with Flowers Baking Co. of California LLC. *See id.* In February 2014, these agreements were each assigned to and assumed by either Modesto Flower or Henderson Flower. *See id.* Plaintiffs drove vehicles and worked long shifts, which are described in detail in the Complaint. *See id.*

Defendants are in the bakery business, distributing bakery goods to retail outlets, restaurants and institutional customers throughout the United States. *See id.* ¶¶ 18, 26. Flowers entered the California market in 2013 when it acquired an existing bakery with customers in California; those customers were mainly large corporate companies. *See id.* ¶ 19. When Defendants first took over the business in California, it relied on bakery delivery drivers hired and paid through a staffing agency, ABM Industries, Inc; those drivers were treated as W-2 employees for tax purposes. *See id.* ¶ 20. In 2013, Defendants transitioned most of their drivers into "Distributor Agreements." *See id.* Distributor Agreements require Delivery Drivers to pay

1

thousands of dollars in exchange for "distribution rights" to service designated territories. *See id.*; *see also id.* ¶ 44. The Distributor Agreements uniformly classify the Delivery Drivers as independent contractors. *See id.* Defendants have employed hundreds of Delivery Drivers out of warehouse facilities located in several Southern California locations. *See id.*

Plaintiffs perform the day-to-day work of ordering, delivering, stocking, and merchandising Defendants' products ("Prospective Distributors," who Defendants classify as employees, also perform this work). *See id.* ¶ 27. Plaintiffs' job requires no special license, certificate, skill, or prior experience. *See id.* Under the Distributor Agreement ("DA"), Plaintiffs were required to incorporate and maintain a majority ownership interest in the corporation and personally guarantee compliance with all contractual terms. *See id.* ¶ 28. The DA prohibited Plaintiffs from carrying products on their route that are "competitive" or "interfere" with the distribution of Defendants' products. *See id.* ¶ 29. Plaintiffs' income largely depended on Defendants' chain accounts, which generate the vast majority of Defendants' direct-store-delivery revenue in California. *See id.* ¶ 30. Defendants develop and maintain the business relationships with chain accounts, fast food outlets, and restaurants. *See id.* Plaintiffs regularly worked over eight hours in a day and forty hours in a week in order to meet Defendants' expectations. *See id.* ¶ 31.

As part of Plaintiffs' work, Plaintiffs pick up trays of Flowers baked goods from Defendants' warehouses. *See id.* ¶ 33. Plaintiffs work designated routes delivering to and stocking shelves of customers assigned by Defendants. *See id.* Defendants provide Plaintiffs with directions and schematics for how to stock its customers' shelves. *See id.* Plaintiffs interact with Defendants' personnel at the warehouse on a daily basis. *See id.* Defendants require the Plaintiffs to purchase the baked goods from Defendants to resell to Defendants' customers, with whom Defendants contract directly. *See id.* ¶ 34. Defendants unilaterally determine the amount of baked goods to deliver and the prices charged to their customers. *See id.* Plaintiffs have no control over the rates charged to Defendants' customers. *See id.* Defendants require Plaintiffs to "rotate" the baked goods stocked in stores per Defendants' policy and schedule. *See id.* ¶ 35. Defendants' personnel regularly check that Plaintiffs have complied with Defendants' requirements; failure to comply can result in discipline. *See id.* Defendants specify when baked goods must be removed from their customers' shelves, and Defendants "buy back" a small percentage of the removed baked goods from the Plaintiffs. *See id.* ¶ 36. Defendants impose strict limits on what Plaintiffs

may do with the remaining baked goods that Defendants do not buy back. *See id.* Plaintiffs' remuneration depends on their ability to drive their vehicles and deliver and stock Defendants' baked goods. *See id.* ¶ 37. Plaintiffs are required to perform their job in compliance with "Good Industry Practice," a term which Defendants have defined in the DA and other materials. *See id.* ¶ 38. Good Industry Practice includes, among other requirements, how to: verify, adjust, and document a load at the warehouse, load Plaintiffs' vehicles, pack and stack bread trays, follow customer schematics for product placement on shelves, set up promotional displays, rotate stock and stales, and return stales to the warehouse. *See id.* Plaintiffs who do not follow Defendants' rules or instructions are subject to various types of discipline, including financial penalties and "breach letters." *See id.* ¶ 39. Defendants retain and/or exercise their right of control over Plaintiffs through Defendants' written rules and policies and unwritten practices. *See id.* ¶¶ 41-42.

As a result of classifying Plaintiffs as independent contractors, Defendants avoided indemnifying Plaintiffs for employment-related expenses that Plaintiffs incurred, including the costs of providing their leased or owned vehicles; all operation costs associated with the vehicle, including fuel, maintenance, repair, cleaning, and licensing; liability and other insurance covering work place injuries; cellular telephones; and miscellaneous tools, such as dollies and pallet jacks. *See id.* ¶¶ 44, 53-54. Defendants also did not indemnify Plaintiffs for employment-related losses, such as cargo loss or damage, and bodily and property damage claims, and Defendants have taken deductions Plaintiffs their compensation to cover many of these employment-related expenses. *See id.* Defendants regularly did not provide timely 30-minute off-duty meal periods to Plaintiffs who worked more than five hours in a day, to provide a second timely 30-minute meal period to Plaintiffs who worked more than ten hours in a day, to authorize and permit 10-minute rest periods for every four hours or major fraction thereof to Plaintiffs who worked more than 3 ½ hours in a day, and to separately compensate Plaintiffs for rest periods. *See id.* ¶¶ 45-47. Defendants additionally failed to compensate Delivery Drivers, including Plaintiffs, for all overtime hours worked, including all hours worked in excess of eight hours in one workday or 40 hours in any one workweek at the rate of no less than one and one-halftimes Plaintiffs' regular rate of pay, and all hours worked in excess of 12 hours in one workday at a rate of no less than two times their regular rate of pay. *See id.* ¶ 48. Finally, Plaintiffs believe that Defendants have not properly maintained payroll records showing the actual hours worked and meal periods taken and missed

3

each day by Plaintiffs. *See id.* ¶ 49. As a result, Defendants owe Plaintiffs unreimbursed business expenses plus interest, repayment of unlawfully deducted wages plus interest, missed meal period compensation plus interest, missed paid rest period compensation plus interest, overtime premium pay and liquidated damages, statutory penalties, and attorneys' fees and costs. *See id.* ¶ 51.

Defendants now move to stay the case. *See* Motion to Stay ("Motion"), Docket No. 18. Plaintiffs oppose, *see* Opposition to Motion to Stay ("Opp'n"), Docket No. 20, and Defendants reply, *see* Reply in Support of Motion to Stay ("Reply"), Docket No. 22. Defendants submitted a supplemental brief after the hearing on February 3, 2020. *See* Supplement to Motion to Stay ("Supp."), Docket No. 30.[1]

## II. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may . . . enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The decision whether to stay an action is committed to the "sound discretion" of the district court weighing "the competing interests which will be affected by the granting or refusal to grant a stay . . . ." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

## III. Discussion

Plaintiffs' case turns on whether they were properly characterized as independent contractors by Defendants. Until recently, the test applied by California courts to make this determination came from *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.

---

[1] Defendants request that the Court judicially notice a group of exhibits. *See* Request for Judicial Notice ("RJN"), Docket No. 21; Request for Judicial Notice in Support of Supplement ("Supp. RJN"), Docket No. 31. The Court considers the documents appropriate for judicial notice. *See, e.g.*, *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record."); *Brown v. Valoff*, 422 F.3d 926, 931-933, n.9 (9th Cir. 2005). Plaintiffs do not dispute the authenticity of the documents. Therefore, the Court takes judicial notice of them.

4

3d 341 (1989). Under *Borello*, the "principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 350. *Borello* also lays out "secondary" indicia for courts to consider, including:

> (a) whether the one performing services is engaged in a distinct occupation or business;
> (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision;
> (c) the skill required in the particular occupation;
> (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (e) the length of time for which the services are to be performed;
> (f) the method of payment, whether by the time or by the job;
> (g) whether or not the work is part of the regular business of the principal; and
> (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* at 351.

On April 30, 2018, the California Supreme Court laid out a new test for determining whether an individual is properly classified as an employee or a contractor. *See Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018). The new test, known as the ABC test, requires the hiring entity to establish each of the following factors:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and
> (B) that the worker performs work that is outside the usual course of the hiring entity's business; and
> (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Id.* at 957. The Ninth Circuit has noted that the ABC test may make it more difficult for employers to classify workers as independent contractors in some circumstances. *See California Trucking Ass'n v. Su*, 903 F.3d 953, 964 (9th Cir. 2018).

Defendants move for a stay based on two questions the case presents: (1) whether the ABC test applies retroactively, and (2) whether the Federal Aviation and Administration Authorization Act ("FAAAA") preempts application of the ABC test. If the FAAAA preempts the ABC test, then the *Borello* test applies to all of Plaintiffs' claims. If the ABC test is not preempted and applies retroactively, then the ABC test applies to all of Plaintiffs' claims. And if the ABC test is

5

not preempted but does not apply retroactively, then the *Borello* test applies to Plaintiffs' claims before April 30, 2018 and the ABC test applies to claims after April 30, 2018.

Cases are pending in the California Supreme Court and the Ninth Circuit that will answer both questions. When faced with the question of retroactivity, the Ninth Circuit originally held that the ABC test was retroactive. *See Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 923 F.3d 575 (9th Cir. 2019). However, the Ninth Circuit withdrew the opinion soon after and certified the question to the California Supreme Court. *See Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 939 F.3d 1045, 1049 (9th Cir. 2019). The California Supreme Court has decided to rule on the question. *See* Notice of Supplemental Authority, Docket No. 19, Ex. 1. Several district courts have granted stays in similar cases pending a decision in *Vazquez*. *See, e.g.*, *Bruers v. Flowers Foods, Inc.*, No. 8:18-CV-01442-JLS-ADS, 2019 WL 5867434, at *6 (C.D. Cal. Aug. 7, 2019); *Henry v. Cent. Freight Lines, Inc.*, No. 2:16-CV-00280-JAM-EFB, 2019 WL 5960140, at *1 (E.D. Cal. Nov. 13, 2019).

Regarding FAAAA preemption, district courts that have considered the question are split. *Compare Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-05433-EDL, 2019 WL 1975460, at *6-8 (N.D. Cal. Mar. 15, 2019); *Alvarez v. XPO Logistics Cartage LLC*, No. 18-cv-03736 SJO (E), 2018 WL 6271965, at *4-5 (C.D. Cal. Nov. 15, 2018); *with Henry v. Cent. Freight Lines, Inc.*, No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330, at *7 (E.D. Cal. June 13, 2019); *W. States Trucking Ass'n v. Schoorl*, No. 2:18-cv-01989-MCE-KJN, 2019 WL 1426304, *10 (E.D. Cal. Mar. 29, 2019). Importantly, a district court recently enjoined the State of California from enforcing Assembly Bill 5 ("AB-5"), the legislative codification of the *Dynamex* decision. *See California Trucking Association v. Becerra*, No. 3:18-cv-02458-BEN-BLM, 2020 WL 248993 (S.D. Cal. Jan. 16, 2020); *see also Id.* 2020 WL 620287 (S.D. Cal. Feb. 10, 2020). The court in *California Trucking* found that AB-5 and the ABC test are likely preempted by the FAAAA. *Id.* at *10. The Ninth Circuit is now hearing an appeal in *California Trucking* on an expedited briefing schedule. *See* Ex. A, Supp. RJN.

Given the highly unsettled state of the law regarding the test for an employment relationship, the Court is inclined to agree with Defendants that a stay is appropriate. Plaintiffs have indicated that they plan to submit a summary judgment motion on Defendants' independent contractor defense. *See* Opp'n at 8. Proceeding with discovery and then subsequent motions before the courts have clarified retroactivity and preemption could lead to inefficiencies and

6

wasted resources for both the parties and the Court. While the tests overlap in various ways, they also contain significant differences, and the *Borello* test includes a number of questions not present in the ABC test. Thus, discovery will differ depending on which test applies (or whether both apply). Plaintiffs have not identified any prejudice that they will suffer if the stay is issued, but the absence of a stay could result in a waste of the parties' resources. The stay will be of limited duration, as both cases are proceeding in their respective courts, and it will promote the orderly course of justice by simplifying the relevant issues, proof required, and questions of law. Therefore, rather than requiring the parties to conduct discovery covering both tests when the pending court cases could result in one test or the other applying across the board, the Court is inclined to grant the stay.

### IV.    Conclusion

For the foregoing reasons, the Court would **GRANT** the Motion for a Stay.